## In re Anonymous 31 D.B. 77 and 37 D.B. 77

Disciplinary Board Docket nos. 31 D.B. 77 and 37 D.B. 77.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania

HENRY, *Board Member*, December 22, 1978—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement (rules), the Disciplinary Board of the Supreme Court of Pennsylvania (board) submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

### I. HISTORY OF PROCEEDINGS

On August 17, 1977, and September 2, 1977, petitions for discipline were filed to the above numbers by the office of disciplinary counsel alleging collectively three separate charges of misconduct on the part of respondent, all relating to his neglect of clients' affairs. No answer was filed with respect to the petitions and they were consolidated for hearing before hearing committee [ ], [ ], Esq., chairman, [ ], Esq. and [ ], Esq. A hearing on the

merits was held on December 13, 1977. Following an initial determination that respondent had violated Disciplinary Rule 6-101(A)(3) (neglect of a legal matter entrusted to him) with respect to two of the charges and finding no violation with respect to the third charge, the committee reconvened on March 22 and April 27, 1978, to hear additional testimony with respect to the type of discipline to be imposed. On September 5, 1978, the committee filed its report recommending a six-months' suspension. [Respondent] filed a brief excepting to the findings of the hearing committee. The office of disciplinary counsel filed a brief opposing the exceptions and urging the adoption of the hearing committee's recommendations. The matter was then referred to this board for review and recommendation to your honorable court.

## II. DISCUSSION

The board has reviewed the findings of fact and conclusions of law by the hearing committee and finds that they are supported by the evidence and adopts them as its own. The circumstances surrounding each charge are summarized as follows:

In late September of 1976, [respondent] was retained by one [A] with respect to a claim against the [ ] School of Trades for allegedly improperly discharging him as a student. A fee of $150 was paid. Respondent conducted no independent investigation of the matter but, as a result of pressure from his client, ultimately prepared a complaint in May of 1977, which was never filed. While the board accepts [respondent's] contention that he was burdened with a heavy court schedule during this period of time and that his client was not entirely

candid or cooperative with him, the fact remains that he took action only when prodded. To compound the matter, he made written misrepresentations to his clients in an effort to explain away his inactivity.

Mrs. [B] retained [respondent] in October of 1974, to handle an uncontested divorce. The fee of $550 was paid and the complaint served but thereafter [respondent] did nothing. Mrs. [B] repeatedly contacted respondent and asked him to proceed and [respondent] repeatedly promised to do so. These requests and assurances were made in the presence of the hearing committee in December of 1977, at the hearing on the merits and again in March and April of 1978, at the hearings on the type of discipline to be imposed. The supplemental material filed with petitioner's brief indicates that, despite the opportunity to dispose of this matter and mitigate the discipline, [respondent] has neglected to do so to this very date.

The hearing committee dismissed the third charge involving a title problem with respect to real estate. It did so on the basis that the matter was originally being handled by another firm and [respondent] was unable to secure the files. Disciplinary counsel points out that there were other alternatives available to [respondent] which he did not pursue. While this board might conclude differently if it were hearing the matter de novo, the conclusions of the hearing committee are supportable by the evidence and will not be disturbed.

Following the hearing committee's decision that [respondent] had violated the Code of Professional Responsibility, disciplinary counsel submitted evidence establishing that [respondent] received informal admonitions on March 15, 1976, June 18,

1976, September 16, 1976, and March 9, 1977. In addition, he received a private reprimand from this board on July 14, 1978. All of these cases involved similar matters of neglect.

After reviewing the record in this matter and [respondent's] past history, the hearing committee concluded that he should be suspended for a period of six months. They were obviously disturbed, as is this board, by the fact that this is not a case of an isolated instance or two of neglect but a continuing pattern of the same. The matter is compounded by the fact that [respondent] has received repeated warnings in the form of informal admonitions by disciplinary counsel and a private reprimand by this board which seem to have had no effect. Most grievous in this regard is his treatment of Mrs. [B], where he promised the hearing committee as well as the client that the matter would be concluded and, over a period of almost one year, still has done nothing. Admonitions, reprimands and warnings have failed; [respondent] has left few alternatives. It is clear that this type of conduct must stop *immediately*. As noted by the hearing committee, "[respondent] has held himself out to the public as capable of discharging the duties of an attorney with respect to legal matters which may be entrusted to him. Despite this representation, it is clear that [respondent] has evidenced an inability to discharge his responsibilities . . ." For this reason, they concluded that he must be suspended from the practice of law in order to protect the public.

Disciplinary counsel has set forth three instances in its brief opposing exceptions where an attorney has been suspended for multiple acts of neglect: Office of Disciplinary Counsel v. [C], 26 D.B. 74,

Office of Disciplinary Counsel v. [D], 48 D.B. 73 and Office of Disciplinary Counsel v. [E], 20 D.B. 75. In each of these cases there was an indication that the attorney had generally lost his ability to function. Mr. [C] had essentially abandoned his practice and did not defend himself at the hearing. In both his case and Mr. [E's], there was an indication that serious physical and emotional problems may have been involved. The board recommended, and your honorable court concurred, that three-months' suspensions be imposed in each case, the concept being that the burden would be placed upon respondents to establish that they have regained their ability to work effectively and resume their practice of law. (These decisions were made before the rule change making reinstatement automatic when suspension is three months or less.) Similar factors were involved in the [D] case.

The record indicates that [respondent] still operates effectively as defendants' counsel in the trial of criminal matters, although some of his past acts of neglect did involve this area of practice. His difficulties stem from the fact that he has accepted more work than he can handle and received retainers and advances of costs which he apparently has expended as the result of financial pressure and is now unable to refund the money or conclude the matters. [Respondent] has stated that it is his intention to seek a salaried position and abandon the private practice of law. [Respondent] has demonstrated that he still has the ability to function as an attorney under the proper circumstances. This fact distinguishes his situation from the three cases previously cited.

In the opinion of the board, to suspend [respond-

ent] from the practice of law at this time would only compound the problem with respect to his clients. His repeated transgressions are such that public discipline in the form of public censure by your honorable court is required. In addition, the board feels that this would be an appropriate case for probation under a program that would require the prompt review of [respondent's] pending matters to determine whether or not there are other cases which are delinquent and establish a program for dealing with the same, provide for the segregation of advanced costs and unearned fees from [respondent's] personal accounts and establish limitations upon his future practice that will eliminate reoccurrences of neglect.

[Respondent] has been given many opportunities in the past to reform his practice. He has demonstrated an inability to do so without assistance. He has attempted to excuse his failures in this regard on the basis of his busy trial schedule and financial pressures. He must be put on notice that these excuses will not be accepted. Failure to act again will provide this board and your honorable court with no other alternative than the suspension recommended by the hearing committee and disciplinary counsel. Because time is very much of the essence, it is our hope that, while the foregoing is only a recommendation to your honorable court which requires your endorsement before it becomes operative, [respondent] will immediately take steps to implement the probationary program set forth in the following recommendation in anticipation of your action since the procedures set forth are mandated by good practice, irrespective of any court order requiring that they be carried out.

## III. RECOMMENDATION

For the reasons set forth above, the disciplinary board recommends to your honorable court that respondent, [    ], be publicly censured by your honorable court and be placed on probation for a period of two years, the terms of said probation to be as follows:

1. Respondent shall designate one or more practicing attorneys who have consented in writing to serve as monitor within 15 days of the date of the court's order. Said monitor or monitors shall be approved by disciplinary counsel for district [    ].
2. Respondent and the monitor shall review the files of all pending matters in which respondent has been engaged as counsel to determine those matters which are delinquent or likely to become delinquent, confer with the client in cases which fall into those categories and file a report with the secretary of the disciplinary board within six weeks from the date of the court's order setting forth the cases which fall into those categories and a program of action to deal with the same. Said program shall be reviewed by a member of the disciplinary board to be designated by the chairman and, if necessary, modified following consultation by said board member with respondent and the monitor.
3. Thereafter, respondent shall file a quarterly report with the secretary of the disciplinary board detailing the action taken in said matters which shall be reviewed and verified prior to filing by the monitor. Said report shall also set forth any new matters which have become delinquent or are likely to become delinquent and the plan of action with respect to said cases.

4. Respondent shall open an escrow account into which shall be deposited all unearned retainer fees and costs. Costs shall be paid from said account as they are incurred and fees transferred to respondent's office account as they are earned. The management of this account shall be reviewed by the monitor and respondent's compliance noted in the required reports.

Mr. McDonnell was absent and did not participate in the adjudication.

## ORDER

EAGEN, *C.J.*, And now, January 9, 1979, the recommendation of the disciplinary board of the Supreme Court of Pennsylvania, dated December 22, 1978, is accepted; and it is ordered, that said [respondent] of [ ] County be subjected to public censure by the Supreme Court as provided in Rule 204(3) of the Rules of Disciplinary Enforcement at the session of this court commencing April 16, 1979, at [ ] and placed on probation for a period of two years, the terms of said probation to be as follows:

1. Respondent shall designate one or more practicing attorneys who have consented in writing to serve as monitor within 15 days of the date of the court's order. Said monitor or monitors shall be approved by disciplinary counsel for district [ ].

2. Respondent and the monitor shall review the files of all pending matters in which respondent has been engaged as counsel to determine those matters which are delinquent or likely to become delinquent, confer with the client in cases which fall into those categories and file a report with the secretary of the disciplinary board within six weeks from the

date of the court's order setting forth the cases which fall into those categories and a program of action to deal with the same. Said program shall be reviewed by a member of the disciplinary board to be designated by the chairman and, if necessary, modified following consultation by said board member with the respondent and the monitor.

3. Thereafter, respondent shall file a quarterly report with the secretary of the disciplinary board detailing the action taken in said matters which shall be reviewed and verified prior to filing by the monitor. Said report shall also set forth any new matters which have become delinquent or are likely to become delinquent and the plan of action with respect to said cases.

4. Respondent shall open an escrow account into which shall be deposited all unearned retainer fees and costs. Costs shall be paid from said account as they are incurred and fees transferred to respondent's office account as they are earned. The management of this account shall be reviewed by the monitor and respondent's compliance noted in the required reports.

Mr. Justice Larsen would impose a six-months' suspension.